John M. Keane, S.
This is a proceeding under SCPA 1809 to determine the validity of a claim of $11,621.42 made by the *142 Commissioner of Social Services of the Town of Union against the estate of the decedent for medical services rendered. The creditor claims reimbursement pursuant to section 366 (subd. 3, par. [b], subpar. [2]) of the Social Services Law, on the ground that medical assistance was “ not correctly paid.” The medical services were rendered under what is popularly called the ‘1 Medicaid ’ ’ legislation.
Based on the information showing assets of approximately $250, furnished on her first application dated May 17, 1966, Lois M. G-illett was eligible to receive medical assistance. Subsequent applications were made on April 27, 1967, May 13, 1968 and October 28, 1968. In none of these applications did decedent disclose that she owned certain shares of IBM stock in addition to the $250 of assets.
At the time, of the first two applications she was the owner of 16 shares of IBM stock. After a 2-for-l stock split in early 1968, she owned 32 shares.
A request was made during the decedent’s lifetime by the Commissioner of Social Services to examine the contents of decedent’s safe-deposit box and this permission was not given. This fact alone would not be proof that decedent owned the certificates. However, other documentary evidence furnished to the court conclusively shows that decedent owned- the shares during the period involved.
There is no dispute about the value of the services rendered. Between May 17,1966 and April 27, 1967 services of a value of $421.60 were rendered. Between April 27, 1967 and May 13, 1968 additional services of a value of $1,153.08 were rendered. In both of these periods the decedent owned sufficient IBM stock to disqualify her for benefits under the act and, therefore, these payments, totaling $1,574.68, must be reimbursed.
During early 1969 decedent incurred a large hospital bill. Even if she had paid this. bill, her assets would still have exceeded the maximum allowed before medical assistance could be provided. A second serious hospitalization soon afterward produced charges that exceeded any assumed balance of property available for their payment.. Decedent at this point would have been eligible for medical assistance.
None of the IBM stock was sold during decedent’s lifetime. It would complicate matters unduly if assumptions were made that sufficient stock had been sold from time to time to cover the charges as they were incurred, resulting each time in an assumed lesser number of shares remaining. Rather, the court will take the value of the stock on October 28, 1968, the date of *143 the last application, and work from that figure. At that time the stock was worth $9,996.
It is true that there was some diminution in the market value between that time and the payment of subsequent expenses. Assuming that decedent had $9,996 in addition to the $250 of other assets, against which the payment of medical services had to be applied, $8,096 would have to be used before decedent became eligible to receive medical assistance.
If payments had been correctly made, there could be no reimbursement from the estate of the decedent, because she was under 65 years of age. (See Social Services Law, § 369.)
Although the claim of $11,621.42 was made for all of the services rendered, this court determines that only $8,096 of said sum was incorrectly paid. As stated previously, this figure is derived from the fact that decedent had IBM stock worth $9,996 in addition to the $250 of other assets.
Therefore, this court determines that the Commissioner of Social Services of the Town of Union has a valid and subsisting claim under section 369 of the Social Services Law against the estate of said decedent in the sum of $8,096 for medical assistance “ not correctly paid.”